IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JENNY WHITE,

Plaintiff,

v.

VANDERBILT UNIVERSITY
MEDICAL CENTER,

(Jury Trial Requested)

Defendant.

**COMPLAINT**

Plaintiff Jenny White ("Plaintiff" or "Ms. White") worked as a Senior Patient Service Specialist at Vanderbilt University Medical Center ("Defendant" or "VUMC") in Nashville, Tennessee, from August 2020 until her termination in November 2025. In March 2025, Ms. White suffered a fall at home and sustained a concussion, which developed into post-concussion syndrome. She was later diagnosed with Postural Orthostatic Tachycardia Syndrome ("POTS"), a disorder of the autonomic nervous system that substantially limits her major life activities, including standing, walking, and driving. Ms. White kept VUMC apprised of her medical conditions and, on the advice of her healthcare providers, requested a reasonable accommodation to work remotely, a request supported by the fact that none of her job duties required in-person patient interaction and that she had previously been permitted to work from home on a hybrid basis. Rather than engage in a good-faith interactive process, VUMC denied her requests, claiming her position "is not a remote position," even though it had approved remote work for a similarly situated employee and had previously provided Ms. White with a laptop and home office setup. After Ms. White renewed her accommodation request and proposed a hybrid schedule, VUMC's manager told her, "We cannot accommodate your illness," and terminated her employment.

VUMC discriminated against Ms. White, failed to accommodate her, and retaliated against her in violation of the Americans with Disabilities Act; discriminated against her in violation of the Tennessee Disability Act; and retaliated against her in violation of the Family and Medical Leave Act.

## PARTIES

1. Plaintiff Jenny White ("Plaintiff" or "Ms. White") is a citizen and resident of Wilson County, Tennessee, and a former employee of Defendant, Vanderbilt University Medical Center.

2. Defendant Vanderbilt University Medical Center ("Vanderbilt" or "VUmc") is a nonprofit corporation. Its registered agent for service of process is National Registered Agents, Inc., 300 Montvue Road, Knoxville, TN 37919-5546

3. At all material times, Defendant has been an employer as defined by the Americans with Disabilities Act, 42 U.S.C. § 12111 and the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA").

4. Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act, 42 U.S.C. §§ 12102(2) and 12111(8) and 29 C.F.R. 160.2(g) and (h)(1).

5. At all material times, Defendant employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2024 and 2025 and is an "employer" as defined by the Family and Medical Leave Act, 29 U.S.C. § 2601.

6. At all material times, Plaintiff was an "eligible employee" under the Family and Medical Leave Act, 29 U.S.C. § 2611(2), having been employed by Defendant for more than twelve months and for at least 1,250 hours of service during the previous twelve-month period.

7. At all material times, Defendant employed Plaintiff.

## JURISDICTION AND VENUE

8. This is an action for unlawful employment practices under the Americans with Disabilities Act 42 U.S.C. §§ 12101 et. seq. ("ADA"), as amended by the ADA Amendments Act of 2008, the Tennessee Disability Act T.C.A § 8-50-103 ("TDA"), and the Family and Medical Leave Act ("FMLA").

9. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391. Plaintiff has complied with all conditions precedent to the filing of her claims pursuant to the 42 U.S.C. § 12101 et. seq to wit:. a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice, the EEOC issued the Notice of Right to Sue on September 30, 2026, and this action was commenced within 90 days of receipt of the Right to Sue.

## FACTUAL BACKGROUND

11. Plaintiff, Jenny White, worked as a Senior Patient Service Specialist for Defendant VUMC in the Vanderbilt Lung Institute in Nashville, Tennessee, from July 2021 until her employment ended on November 30, 2025. Ms. White has worked for VUMC since August 2020.

12. Ms. White's job duties included reviewing overnight emergency cases, scheduling appointments, managing message baskets and fax folders, overseeing tasks for providers, and requesting medical records. None of her responsibilities involved in-person interactions with patients. Ms. White communicated with patients through messaging on the health portal or by phone.

13. Prior to 2024, Ms. White was permitted to work remotely one or two days per week, and VUMC provided her with a laptop and home office setup to support a hybrid schedule.

14. In 2024, Ms. White received a new manager, Lindsay France, who was against remote work. However, Ms. France purchased docking station for several employees, including Ms. White, so that they could more efficiently work from their laptops at home.

15. In August 2024, Ms. White applied for and used intermittent leave under the FMLA for migraines. Her healthcare provider, Lexi Rouse, APRN, of Neurology, certified her serious health condition.

16. On March 19, 2025, Ms. White suffered a fall at home and sustained a concussion. She was seen at the Vanderbilt Emergency Department, which diagnosed the concussion.

17. On March 24, 2025, Ms. White had a follow-up appointment with her neurologist.

18. On March 27, 2025, Ms. White saw her primary care provider and was diagnosed with post-concussion syndrome. Her provider placed her on leave from work. She continued to experience severe dizziness and vertigo and was referred to a physical medicine and rehabilitation specialist. Ms. White has vestibular vertigo permanently in her right ear.

19. Ms. White was approved for continuous FMLA leave from March 20, 2025, through April 17, 2025, followed by continuous Non-FMLA leave from April 18, 2025, through June 13, 2025. She then received short-term disability benefits through Unum, which continued through September 14, 2025.

20. On April 14, 2025, Ms. White had her first appointment with the physical medicine and rehabilitation doctor. Throughout this time, she continued to attend regular follow-up appointments with her providers. Ms. White's physical therapy was ultimately discontinued on May 13, 2025 as the movements and walking made her sick, resulting in hot sweats, vomiting, weakness, shaking, and dizziness.

21. On July 3, 2025, Ms. White underwent a tilt table test for POTS.

22. On July 7, 2025, Ms. White completed VUMC's ADA reasonable accommodation intake paperwork, requesting to work from home.

23. On July 16, 2025, Ms. White's healthcare provider, Stephanie Kaelin, APRN, submitted ADA paperwork requesting that Ms. White work remotely for a period of two months, stating that due to her medical condition she was unable to drive and needed to take frequent breaks from computer screens.

24. On July 18, 2025, Ms. White received a letter from Rebecca Liebner, an Employee Relations Consultant, stating that her request to work from home could not be accommodated because her role as a Senior Patient Service Specialist "is not a remote position." VUMC instead approved leave as an accommodation, beginning July 15, 2025, and ending September 15, 2025, though no other options were ever discussed with Ms. White.

25. At the same time, another similarly situated employee, Kayleigh Jones, was permitted to work from home for six weeks after having surgery. Upon information and belief, Ms. Jones requested to work from home for an additional eight weeks, and Ms. France approved her request.

26. On August 26, 2025, Ms. White was diagnosed with POTS.

27. POTS is a disorder of the autonomic nervous system that substantially limits Ms. White's major life activities, including standing, walking, driving, concentrating, thinking, sleeping, and working. When upright, Ms. White may experience dizziness, lightheadedness, tachycardia, and cognitive impairment, requiring her to sit or recline to prevent symptom escalation. Her condition is exacerbated by heat and prolonged standing.

28. Ms. White returned to work on September 15, 2025. Later that day, she experienced a flare-up of her condition. Ms. France sent Ms. White home, stating that she needed to see a doctor

for accommodations because she was considered a liability. However, Ms. France stated that she would never approve the accommodation but had to make sure she was following procedures.

29. On September 17, 2025, VUMC informed Ms. White that she had exhausted all available FMLA and Non-FMLA leave, and her request was transferred to the Employee Relations team for an accommodation.

30. On September 17, 2025, Ms. White completed a renewed ADA accommodation intake form, and her provider resubmitted ADA paperwork requesting full remote work due to the permanence of her condition. Ms. White also offered to work a split schedule of three days from home and two days in the office.

31. Ms. White's renewed accommodation request was assigned to Rebecca Liebner; however, Ms. Liebner never reached out or spoke to Ms. White during the ensuing weeks.

32. On October 29, 2025, Ms. Liebner informed Ms. White that her provider's requested accommodation, including working from home three to four days per week, frequent breaks, and remaining seated most of the day, could not be accommodated. Ms. Liebner further stated that her provider's alternative request for intermittent leave of up to two days per week for flares, a fifteen-minute break every hour, for the next year, also could not be approved.

33. On October 30, 2025, Ms. White met remotely with Human Resources personnel Tammy McBride and Ms. France. During the meeting, she was again told that her request to work from home could not be approved because her role is not remote. Ms. White suggested a hybrid schedule, working three days from home and two days in the office, but this was also denied.

34. During this meeting, Ms. France told Ms. White, "We cannot accommodate your illness," and then informed her that she was being terminated effective November 3, 2025.

35. By letter dated November 3, 2025, signed by Ms. France as Administrative Director, VUMC confirmed that because it was “unable to accommodate the work restrictions” Ms. White’s provider had stated and she was “not able to return to work without those restrictions,” Ms. White’s employment relationship with VUMC would end November 30, 2025. Ms. White’s last day of employment was November 30, 2025.

36. VUMC’s stated justification that Ms. White’s position “is not a remote position” is pretextual. All of Ms. White’s job duties were capable of being performed remotely and involved no in-person patient interaction; VUMC had previously permitted her to work remotely on a hybrid basis and provided her with a laptop and home office setup; and VUMC approved remote work for a similarly situated employee while denying it to Ms. White.

37. As a direct and proximate result of Defendant’s unlawful acts, Ms. White has suffered lost wages and benefits, the loss of her employer-provided health, dental, and vision insurance, out-of-pocket costs to replace that insurance, and emotional pain, suffering, humiliation, and loss of enjoyment of life.

## COUNT I
**Violation of the ADA/ADAAA - Discrimination**

38. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

39. Pursuant to the ADA, an individual is considered to have a disability if she has a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such impairment.

40. Plaintiff was a qualified individual with a disability within the meaning of the ADA.

41. Her post-concussion syndrome and POTS substantially limit one or more of her major life activities, including standing, walking, and driving, as well as the operation of major bodily functions, including her neurological and circulatory function.

42. Plaintiff was terminated because of her disability and/or Defendant regarded her as disabled.

43. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, and lost earnings and benefits.

44. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## COUNT II
## Violation of ADA/ADAAA – Failure to Accommodate

45. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

46. Pursuant to the ADAAA, an individual is considered to have a disability if she has a physical impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such impairment.

47. Plaintiff was a qualified individual with a disability within the meaning of the ADA.

48. Her post-concussion syndrome and POTS substantially limit one or more of her major life activities, including standing, walking, and driving, as well as the operation of major bodily functions, including her neurological and circulatory function.

49. Plaintiff was qualified to perform the essential functions of her job with a reasonable accommodation, namely, the ability to work remotely, as demonstrated by the remote-capable nature of all of her job duties and her prior hybrid work arrangement.

50. Plaintiff requested a reasonable accommodation of remote work, which was supported by her healthcare providers, who are providers for Defendant.

51. Defendant failed to engage in a good-faith interactive process to identify a reasonable accommodation. Instead, Defendant repeatedly denied Plaintiff's medically supported requests for remote work, claiming that her position "is not a remote position," and ultimately terminated her employment.

52. Plaintiff's accommodation requests were feasible and would not have caused undue hardship to Defendant. Defendant has offered similar accommodation to other similarly situated employees.

53. Due to Plaintiff's disability and request for accommodation, Defendant terminated her employment on November 30, 2025.

54. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, and lost earnings and benefits.

55. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## COUNT III
## Violation of the ADA/ADAAA – Retaliation

56. Plaintiff restates and incorporates herein the foregoing paragraphs.

57. It is federal public policy and law under the Americans with Disabilities Act that employees must be able to exercise their rights without fear of reprisal or penalty from an employer.

58. Plaintiff engaged in protected activity under the ADA when she made good-faith requests for reasonable accommodation in the form of remote work due to her disability.

59. Defendant knew of Plaintiff's protected activity.

60. In violation of the ADA, Defendant retaliated against Plaintiff by denying her accommodation requests and terminating her employment shortly after she renewed her request for accommodation and proposed a hybrid schedule.

61. There is a causal connection between Plaintiff's protected activity and the adverse action taken against her, as demonstrated by the temporal proximity between her accommodation requests and her termination and by Defendant's shifting and pretextual justification that her position is not remote.

62. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, and lost earnings and benefits.

63. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## COUNT IV
## Violation of the TDA - Disability Discrimination

64. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

65. Pursuant to the TDA, there shall be no discrimination in the hiring, firing, and other terms and conditions of employment of any private employer against a qualified individual on the basis of disability.

66. Plaintiff is a qualified individual with a disability who, with or without reasonable accommodation, can perform the essential functions of her position.

67. Defendant discriminated against Plaintiff on the basis of her disability, or because it regarded her as disabled, in violation of the TDA, which culminated in her termination.

68. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, and lost earnings and benefits.

69. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## COUNT V
## Violation of the FMLA – Retaliation

70. Plaintiff restates and incorporates herein the foregoing paragraphs.

71. At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2).

72. Defendant is an employer under the FMLA, 29 U.S.C. § 2611(4)(A).

73. Plaintiff was entitled to receive FMLA leave to care for her own serious health conditions and physical impairments, and she took FMLA leave beginning March 20, 2025.

74. It is unlawful for an employer to interfere with, restrain, or deny the exercise of, or to discriminate against an employee for exercising, any right provided under the FMLA. 29 U.S.C. § 2615(a).

75. Defendant retaliated against Plaintiff for exercising her rights under the FMLA. Plaintiff was approved for and used all available FMLA and Non-FMLA leave in connection with her serious health condition, and Defendant terminated her employment following her protected leave and her renewed request for accommodation.

76. Defendant's conduct was a motivating factor in the adverse employment action taken against Plaintiff and harmed and caused damage to Plaintiff.

77. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;
2. Back pay and damages for lost benefits, insurance, and reimbursement for medical costs due to the loss of her insurance;
3. Reinstatement and/or front pay;
4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;
5. Punitive damages;
6. Liquidated damages;
7. Attorneys' fees and expenses;
8. Prejudgment interest and, if applicable, post-judgment interest; and
9. Such other and further legal or equitable relief to which she may be entitled under the ADA, the TDA, the FMLA, and any other statutory or common law.

Respectfully submitted,

*/s/ Heather Moore Collins*

Heather Moore Collins BPR # 026099
Lucia V. Izzolo BPR # BPR # 042496
HMC CIVIL RIGHTS LAW, PLLC
302 Peachtree Street
Nashville, TN 37210
615-724-1996
heather@hmccivilrights.com

lucia@hmccivilrights.com

*Attorneys for Plaintiff*